IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| KATHERINE M. DAVIDSON, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 05-0714-CV-W-ODS |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER AND OPINION AFFIRMING FINAL DECISION
OF COMMISSIONER OF SOCIAL SECURITY**

Pending is Plaintiff's request for review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits under Title II of the Social Security Act. For the following reasons, the Commissioner's decision is affirmed.

I. BACKGROUND

Plaintiff was born in April 1964 and has a high school education. She has prior work experience as an office clerk, driver, and optometrist assistant. On August 8, 2002, Plaintiff was in her garage when she was accidentally hit and pinned to the wall by a car. The accident caused fractures in her left tibia and left femur. Surgery was performed by Dr. Robert Sharpe, and the procedure included the insertion of a rod and other hardware. Plaintiff was discharged to the Rehabilitation Unit on August 15 with instructions to use crutches or a walker to prevent her left leg from bearing any weight. R. at 103-06. She was discharged from rehabilitation on August 20; while able to ambulate to an acceptable degree in light of her recent surgeries, she was still using a walker and other assistive devices. R. at 129-30.

Plaintiff saw Dr. Sharpe on August 27, 2002, for a follow-up examination. Dr. Sharpe reported Plaintiff still could not bear weight on her left leg and that she had

developed a torn anterior cruciate ligament ("ACL") during rehabilitation.  He recommended a brace be worn on her right knee, discussed the possibility that she might need surgery, and recommended continued exercises with her left leg to increase range of motion and strength.  R. at 159.  Similar recommendations were made on September 10.  R. at 159.  On October 9, Plaintiff reported "doing some weight bearing on her left leg despite" the precautions Dr. Sharpe had issued.  Her range of motion was only three degrees short of full extension, her knee was stable and there was no swelling or tenderness.  Physical therapy was reported "to be going well" and she was advised to continue.  Dr. Sharpe also advised her to begin limited weight bearing on her left leg.  R. at 158.  One month later, Dr. Sharpe reported that her incisions were "nicely healed" and she had regained full extension.  X-rays revealed the hardware was stable, and an MRI was arranged for her right knee.  R. at 158.  The MRI confirmed Plaintiff's right ACL was torn and the possibility of surgery was discussed.  R. at 157.

On December 4, 2002, Plaintiff reported "[s]he has been doing fairly well with her walking.  No major complaints.  Some occasional feelings of instability of her right knee."  The range of motion in her left knee was "nearly full with good full extension and 130 degrees of flexion.  The knee is stable.  She is neurovascularly intact."  Plaintiff was instructed to continue walking (with a cane if need be) and the prospect of surgery for her right knee after her left knee fully healed was discussed again.  R. at 157.  In early January 2003, Plaintiff reported "doing well," not experiencing pain in her left knee, and using her cane only "occasionally."  R. at 156-57.  However, x-rays caused Dr. Sharp to conclude the fracture was not healing at an appropriate rate and the merits of more surgery were discussed.  R. at 155-56.  Surgery was performed in mid-February; some of the previously inserted hardware was removed and a larger rod was inserted.  R. at 141.

On March 5, 2003, Plaintiff told Dr. Sharpe she was doing "fairly well;" although she had some soreness and stiffness in her left knee, "[h]er pain control otherwise seems to be pretty good."  R. at 155.  In mid-April, Dr. Sharpe reported Plaintiff had not complied with his instructions in that she had commenced weight bearing on her left leg sooner than he advised.  Plaintiff also reported no tenderness and demonstrated

improving range of motion.  Dr. Sharpe advised her to continue weightbearing as tolerated with the aid of a crutch or cane as necessary.  R. at 154.  A visit two weeks later revealed continued progress.  R. at 154.  By the end of May, Plaintiff was walking without a cane or crutch although she demonstrated "a mild limp."  Physical therapy was to be continued, as Plaintiff reported that it had been helpful.  R. at 152.  On June 25, Plaintiff reported "doing fairly well" but was experiencing "pain, especially after riding in a car for prolonged periods of time, as well as difficulty with squatting."  She continued to demonstrate a mild limp.  Her physical therapy consisted of lifting weights, biking and swimming.  Plaintiff was directed to continue the strengthening program and "resume her activity as she tolerates in regards to physical activity in sports."  R. at 152.

Plaintiff's next appointment with Dr. Sharpe reflected in the Record took place on September 12, 2003.  She complained of soreness in her left knee accompanied by occasional swelling and redness and, while she still had a limp, it was described as "very mild."  Dr. Sharpe believed Plaintiff's complaints were "related to residual weakness in her leg [and] recommended an aggressive strengthening program for her quadriceps and hamstrings."  The possibility that more hardware would need to be removed was also discussed.  R. at 216.  A similar exchange occurred in mid-October, at which time Plaintiff reported her left knee became stiff after sitting for a long period of time (such as long car rides or watching a movie) although she demonstrated good range of motion.   Dr. Sharpe discussed treatment for Plaintiff's right ACL, which was bothering her "rarely."  R. at 213.

On February 10, 2005, Plaintiff saw Dr. Robert Paul, an orthopedic surgeon, and asked about the "pros and cons of removing the hardware, as she has some discomfort in the knee and wishes to know if removal of hardware would improve this condition."  R. at 218.  Dr. Paul explained that "severe pain . . . would warrant removal of the plate hardware [but] if she simply has discomfort to the inside of the knee with weight bearing and certain types of range of motion I do not feel that plate removal would improve this problem."  R. at 219.

On April 7, 2005, Dr. Sharpe prepared a residual functional capacity form ("RFC").  This was after the ALJ rendered his decision, so the ALJ did not have the

benefit of this evidence.  The RFC was submitted to and reviewed by the Appeals Council.  In his RFC, Dr. Sharpe indicated Plaintiff had a "well-healed fracture" but still suffered from pain, stiffness and weakness in her left knee and hip and intermittent pain in her right knee.  The pain was precipitated by prolonged walking, standing, sitting, and changes in weather.  He opined Plaintiff could sit for fifteen minutes at a time and no more than two hours a day, stand for fifteen minutes at a time and no more than two hours a day, and needed to walk for at least five minutes every fifteen minutes of the day.  R. at 221-23.

During the hearing, Plaintiff testified that she drives to her daughter's games (which last two to four hours) and the store.  She does "some" of the grocery shopping and has no difficulty doing so.  R. at 234, 255-56.  Her last job was at the car lot owned and operated by her husband, where she performed clerical work and delivered cars to and from area auto auctions.  Plaintiff worked as the office manager from 1998 until her accident in 2002.  Prior to that job (from 1988 to 1998) Plaintiff worked as an optometrist assistant.  R. at 235.  She described herself as experiencing numbness near the part of the knee where the plate is located and constant pain that increases due to constant bending or from sitting too long.  Her range of motion is limited but only to the extent that it prevents her from bending or squatting.  She rated the pain as a six or seven on a scale of one to ten.  T. at 237-40.  She also testified her right knee is just as painful due to the torn ACL; although surgery was required to repair it, Plaintiff was "leery" about having surgery.  R. at 240-41.  She reported that she could only sit for fifteen to twenty minutes before she would need to get up, and she usually sits, reclines or lies down with her leg propped up.  R. at 244-45.  Weather changes and activity exacerbate the pain.

Plaintiff's husband also testified.  His testimony was largely consistent with Plaintiff's testimony, and emphasized the difficulties arising from Plaintiff's need to sit with her leg elevated.  R. at 257-69.

The ALJ elicited testimony from a vocational expert ("VE").  The VE was asked to assume a person of Plaintiff's age, education and work experience who was capable of lifting no more than ten pounds, standing and walking no more than two hours per day,

sitting for up to six hours a day, and could not climb ladders, crouch, crawl, squat, or experience concentrated exposure to cold and dampness. The VE testified that such a person could perform their past work as an optometrist assistant and could perform the clerical tasks (but not the driving tasks) associated with being the office manager for the car lot. R. at 271-72. The ALJ amended the hypothetical to add a requirement that the individual have the option to sit or stand at will, and the VE testified this amendment would create difficulties in performing the optometrist assistant's duties, but would not preclude clerical work. R. at 272. In the third hypothetical, the VE was asked to assume the claimant needed to elevate their legs. The VE further testified that an employer would tolerate "occasional" elevating of the leg or feet, but employment could not be maintained if the need were "continuous." The VE qualified her answer due to ambiguity over the amount of elevation contemplated by the VE's hypothetical, explaining ergonomic stools are commonplace, and they allow elevation of approximately one foot. R. at 272-73. However, if the elevation required was waist high or greater, then all work would be precluded. The VE also testified that if the sit/stand option had to be exercised every ten minutes, the claimant would have difficulty completing tasks in a timely manner. R. at 275-76.

Plaintiff's insured status under Title II expired on December 31, 2003, and ALJ focused on her status prior to that date. The ALJ discounted Plaintiff's testimony based primarily on the records from Plaintiff's visits to Dr. Sharpe, which he summarized as demonstrating "slow but satisfactory recovery from serious leg injuries and . . . the capacity for some sedentary work." He noted the medical records' failure to indicate Plaintiff was debilitated to the degree she described. R. at 18. The ALJ concluded Plaintiff has the ability to "perform some sedentary work but is able to lift less than ten pounds . . . stand and/or walk two of eight hours, and sit six of eight hours . . . cannot climb ladders, crawl, crouch or kneel . . . only occasionally climb stairs, stoop or balance . . . [and] requires a sit/stand option at will and the need to elevate her feet occasionally to no more than one foot in height." R. at 18-19. The ALJ then concluded Plaintiff could not perform her past relevant jobs, but could transition to other clerical work that did not contain the driving requirements her job at the car lot called for. R. at 19-20.

As indicated earlier, Dr. Sharpe's RFC was submitted to and considered by the Appeals Council. R. at 10. In denying Plaintiff's request for review, the Appeals Council noted Dr. Sharpe's RFC was dated over a year after Plaintiff's insured status expired, so it could not have affected the ALJ's decision. R. at 7-8.

## II. DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Smith v. Schweiker, 728 F.2d 1158, 1161-62 (8th Cir. 1984).

Though many, Plaintiff's arguments all are variants of a single challenge to the Commissioner's decision; namely, a contention that it is not supported by substantial evidence in the record as a whole. Plaintiff properly observes Dr. Sharpe's RFC is considered part of the record because it was accepted and considered by the Appeals Council. However, even with the RFC, the Commissioner's final decision is supported by substantial evidence. The Appeals Council properly noted Plaintiff's insured status expired on December 31, 2003, and nothing in the RFC establishes that it is describing Plaintiff's condition on or before that date. Moreover, the RFC is inconsistent with Dr. Sharpe's treatment notes from before December 31, 2003, and are not entitled to deference. E.g., Haggard v. Apfel, 175 F.3d 591, 595 (8th Cir. 1999). Plaintiff's torn right ACL is treatable; Plaintiff simply has not arranged for the surgery. Moreover, she

6

described her left knee as hurting as much as her right knee – yet her complaints about the right knee are relatively few and minor, suggesting her left knee pain is minor as well.

Plaintiff also challenges the ALJ's decision to discount Plaintiff's testimony about pain. The critical issue is not whether Plaintiff experiences pain, but rather the degree of pain that she experiences.  House v. Shalala, 34 F.3d 691, 694 (8th Cir.1994). The familiar standard for analyzing a claimant's subjective complaints of pain is set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984) (subsequent history omitted):

> While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.
>
> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1.  The claimant's daily activities;
> 2. the duration, frequency and intensity of the pain
> 3. precipitating and aggravating factors;
> 4. dosage, effectiveness and side effects of medication;
> 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

739 F.2d at 1322. Plaintiff's statements to Dr. Paul reflect Plaintiff experienced less pain than she described in her testimony. Similarly, her statements to Dr. Sharpe, his assessments, and his instructions to Plaintiff are inconsistent with Plaintiff's testimony. Accordingly, the ALJ was justified in according more weight to those pieces of evidence than to Plaintiff's testimony.

Finally, Plaintiff faults the ALJ for failing to include "pain" as a component of hypothetical questions posed to the VE. Plaintiff's argument is flawed. Pain, in and of itself, is not a factor to be considered; rather, it is the effects of the pain that affect a person's functional capacity. The VE did not ignore Plaintiff's pain, as evidenced by his inclusion of a need for Plaintiff to have a sit/stand option and the ability to elevate her leg up to one foot in height.

### III. CONCLUSION

The Commissioner's final decision is supported by substantial evidence in the record as a whole, as is therefore affirmed.
IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
DATE: April 24, 2006                           UNITED STATES DISTRICT COURT